J-S41012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ORLANDO ROSADO | : | |
| | : | |
| Appellant | : | No. 2503 EDA 2017 |

Appeal from the PCRA Order August 3, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010509-2012

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 25, 2018**

Appellant, Orlando Rosado, appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, on the basis it was untimely filed.  In addition, appointed PCRA counsel has filed with this Court a petition to withdraw his representation and an **Anders** brief.[1]  After a careful review, we grant counsel's petition for leave to withdraw, and we affirm the order dismissing Appellant's PCRA petition.

---

[1] PCRA counsel filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), instead of a **Turner/Finley** brief, which is the appropriate filing in the PCRA context.  **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). However, "[b]ecause an **Anders** brief provides greater protection to a defendant, this Court may accept an **Anders** brief in lieu of a **Turner/Finley**

---

\*   Former Justice specially assigned to the Superior Court.

The lower court has set forth the facts underlying Appellant's convictions as follows:

In May of 2012, [Appellant] and Crystal Miller had been paramours for about six years. The couple lived. . .in Philadelphia with their two children, [including the victim who was eleven months old]. Both [Appellant] and Miller had been addicted to heroin in the past. For about the same past six years, [Appellant] and Miller had been participating in methadone programs to manage their heroin addictions. In [Appellant's] program[,] he took doses of methadone at a clinic; however, [Appellant] had admitted to Miller that at times he would buy methadone on the street. Although Miller believed that [Appellant] had stopped using heroin, about a year prior to [the victim's] death, [Appellant] had secretly begun using heroin again.

On May 10, 2012, at approximately 7:00 p.m., [Appellant] was present inside [his residence] with [the victim] while Miller attended church. Miller returned to the apartment at around 9:00 p.m. and checked on [the victim] who was sleeping in the bassinet in their living room. At approximately 10:00 p.m., after putting [their other child] to bed, Miller went to sleep in her bedroom, while [Appellant] cared for [the victim] who was sleeping in the living room.

On May 11, 2012, at about 3:00 a.m., [Appellant] made a bottle of baby formula and fed [the victim]. At approximately 6:30 a.m., Miller awoke when she heard [Appellant] yell, "call 9-1-1-, call 9-1-1." Miller observed [the victim] limp and unresponsive in the bassinet, along with vomit and a piece of grape. At around 7:00 a.m., Mr. Giovanni Nieves, as he normally did, arrived at [Appellant's] home to transport him to the methadone clinic. [Appellant] came outside with [the victim] in his arms and they drove to the hospital instead of waiting for the ambulance that had been called. While en route, they encountered the ambulance, which took [the victim] to the

_____

brief." ***Commonwealth v. Widgins***, 29 A.3d 816, 817 n.2 (Pa.Super. 2011) (citation omitted). We will refer to counsel's erroneously titled ***Anders*** brief for Appellant as a ***Turner/Finley*** brief. Appellant has neither responded to the petition to withdraw as counsel nor retained alternate counsel for this appeal.

- 2 -

hospital. At 7:14 a.m., [the victim] was pronounced dead at St. Christopher's Hospital for Children.

Lisa Mundy, the Laboratory Supervisor for the Medical Examiner's Office and an expert in chemistry and forensic toxicology, testified to the tests performed by the Medical Examiner's Office on the [victim's] urine, liver, and blood, as well as on the contents of the bottle given to the [victim]. The bottle [Appellant] gave the [victim] contained a methadone concentration of 230 nanograms per milliliter and 6-acetlmorphine, a metabolite of heroin. When heroin metabolizes it breaks down into 6-acetylmorphine and morphine. Both methadone and EDDP, a metabolite for methadone, were found in the [victim's] liver. The [victim's] cardiac blood contained a methadone concentration of 320 micrograms per liter.

After obtaining a presumptive positive for opiates in the [victim's] urine, the Office of the Medical Examiner requested NMS Labs perform tests on the [victim's] urine and blood as NMS Labs could more accurately detect opiates. According to tests performed by NMS Labs, the [victim's] urine contained twenty-three nanograms per milliliter of free morphine, a metabolite of heroin. No free morphine was found in the blood.

Dr. Gary L. Collins, the Deputy Chief Medical Examiner and an expert in forensic pathology, performed the autopsy on the [victim] and used the test results from the Medical Examiner's Office and NMS Labs. The results of the tests were consistent with the [victim] having consumed heroin and methadone. According to Dr. Collins the results were inconsistent with the [victim] ingesting a trace amount of the drugs. In other words, the results were inconsistent with heroin being passed from the hands of the person who made the bottle, but instead were consistent with heroin and morphine being in the liquid in the bottle. Dr. Collins concluded the [victim's] manner of death was homicide and the cause of death was drug intoxication.

On May 11, 2012, and May 22, 2012, [Appellant] gave interviews to the police in which he insisted that he was unaware of how methadone entered the [victim's] body. [Appellant] suggested that the victim may have found a dropped methadone pill. On June 4, 2012, Detective Meissler conducted a third interview with [Appellant]. This time, [Appellant] attempted to blame his [six-year-old] daughter [] for her younger brother's death, saying that sometimes she was jealous [of] him. Later in the interview, [Appellant] admitted that on the night of the

murder he was under the influence of heroin, having injected about eight bags. [Appellant] explained that he kept the methadone in a plastic bottle and claimed that he mistook the methadone for water and put it in the baby's bottle. Based on these statements [Appellant] was arrested.

PCRA Court Opinion, filed 8/3/17, at 2-3 (citation omitted).

Represented by counsel, Appellant proceeded to a bench trial, at the conclusion of which the trial court convicted him of third-degree murder and endangering the welfare of a child ("EWOC"). On September 30, 2013, the trial court sentenced Appellant to fifteen years to forty years in prison for third-degree murder and one year to two years in prison for EWOC; the sentences to run concurrently.

Appellant filed a timely, counseled post-sentence motion, which the trial court denied on November 18, 2013. Thereafter, Appellant filed a timely, counseled notice of appeal; however, on May 15, 2014, this Court dismissed Appellant's direct appeal due to counsel's failure to file an appellate brief.

On December 21, 2016, Appellant filed a *pro se* PCRA petition[2] in which he challenged the sufficiency of the evidence supporting his convictions and requested his direct appeal rights be reinstated *nunc pro tunc* due to defense

_____

[2] Although Appellant's *pro se* PCRA petition was time-stamped on December 29, 2016, under the prisoner mailbox rule, we shall deem it to have been filed when Appellant handed it to prison authorities on December 21, 2016. **See Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa.Super. 2006) (noting that pursuant to the prisoner mailbox rule a document is deemed filed when placed in the hands of prison authorities for mailing).

counsel's ineffectiveness in failing to file an appellate brief on direct appeal.

Appellant averred that:

> When [direct appeal] counsel failed to respond to letters wrote to him by [Appellant] on 10/31/16 [and] 11/14/16 asking what the status of the case was, [Appellant] had his family go online and copy the docket sheet [for his case] and discovered that [direct appeal] counsel [] ha[d] abandoned the direct appeal for failure to file a brief[.]

Appellant's *Pro Se* PCRA Petition, filed 12/21/16, at 3.

Subsequently, the PCRA court appointed counsel to represent Appellant, and on May 31, 2017, counsel filed an amended PCRA petition. Therein, PCRA counsel sought the reinstatement of Appellant's direct appeal rights *nunc pro tunc* on the basis direct appeal counsel was *per se* ineffective in failing to file a brief on behalf of Appellant. PCRA counsel recognized Appellant's PCRA petition was untimely filed, but he averred Appellant was entitled to the "newly-discovered facts" timeliness exception of 42 Pa.C.S.A. § 9545(b)(1)(ii). In this regard, PCRA counsel averred that, "despite repeated letters to his appellate counsel, Petitioner did not learn of the aforementioned dismissal by [the] Superior Court until after November 14, 2016." Counseled PCRA Petition, filed 5/31/17, at 4.

On June 27, 2017, the Commonwealth filed a brief in opposition to Appellant's PCRA petition, and by order filed on June 29, 2017, the PCRA court gave notice of its intent to dismiss Appellant's PCRA petition without an evidentiary hearing. Appellant filed no response, and on August 3, 2017, the PCRA court dismissed Appellant's PCRA petition.

This timely, counseled appeal followed. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement, and consequently, Appellant did not file such a statement. However, the PCRA court filed a Pa.R.A.P. 1925(a) opinion setting forth the reasons for its dismissal of Appellant's petition. On January 29, 2018, PCRA counsel filed in this Court a petition for leave to withdraw as counsel, as well as a supporting brief.

Prior to addressing the merits of Appellant's claims on appeal, we must first decide whether counsel has fulfilled the procedural requirements for withdrawing his representation. *Commonwealth v. Daniels*, 947 A.2d 795, 797 (Pa.Super. 2008). This Court has listed the conditions counsel must meet in seeking to withdraw in a collateral appeal as follows:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [*Turner*, *supra* and *Finley*, *supra* and] ... must review the case zealously. *Turner/Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw. Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> * * *
>
> [W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of *Turner/Finley*, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

- 6 -

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa.Super. 2012) (citation omitted).

Herein, PCRA counsel indicates he communicated with Appellant concerning the instant appeal, independently and conscientiously reviewed the record, conducted legal research, and ultimately concluded that the appeal is wholly frivolous. Counsel also lists in the brief the issues Appellant wishes to raise and explains why, in his view, Appellant is not entitled to relief.

In addition, PCRA counsel has attached to his petition to withdraw a copy of the letter he sent to Appellant wherein counsel advised Appellant of his right to proceed *pro se* or through privately-retained counsel. Counsel also affixed a copy of his petition to withdraw and brief to the letter. Thus, we conclude that PCRA counsel has substantially complied with the procedural requirements of *Turner* and *Finley*. Therefore, we must proceed with an independent review of this case. *Doty*, *supra*.

Initially, we note PCRA counsel presents the issue of whether the PCRA court properly dismissed Appellant's petition on the basis it was untimely filed. With regard to the filing of petitions under the PCRA, this Court has observed:

> The filing mandates of the PCRA are jurisdictional in nature and are strictly construed. The question of whether a petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary. An untimely petition renders this Court without jurisdiction to afford relief.

*Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa.Super. 2013) (citations omitted).

- 7 -

A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

(i)      the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;

(ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." **Commonwealth v. Marshall**, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). Moreover, as this Court has often explained, all of the time-bar exceptions are

subject to a separate deadline. Our Supreme Court has held that any petition invoking an exception must show due diligence insofar as the petition must be filed within 60 days of the date the claim could have first been presented. *Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339 (2013); 42 Pa.C.S.A. § 9545(b)(2).

Here, this Court dismissed Appellant's direct appeal on May 15, 2014, and Appellant did not file a petition for allowance of appeal with our Supreme Court. Consequently, his judgment of sentence became final on June 16, 2014, when the thirty-day period for filing a petition for allowance of appeal with our Supreme Court expired.[3] *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113. He had one year from that date, or until approximately June 16, 2015, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b). Therefore, his current petition, filed on December 21, 2016, is facially untimely. *See* 42 Pa.C.S.A. § 9545(b)(1).

Appellant attempts to invoke the timeliness exception of 42 Pa.C.S.A. § 9545(b)(1)(ii) relating to the "newly-discovered fact" exception. Specifically, Appellant suggests that the "newly-discovered fact" is that direct appeal

---

[3] We note the thirtieth day, June 14, 2014, fell on a Saturday. Thus, the last day Appellant could have filed a timely petition for allowance of appeal was Monday, June 16, 2014. *See* 1 Pa.C.S.A. § 1908 (providing that when the last day of a calculated period of time falls on a Saturday or Sunday, such days shall be omitted from the computation).

counsel effectively abandoned him by failing to file a brief, thus resulting in the dismissal of his direct appeal.

Section 9545(b)(1)(ii) "requires [a] petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised due diligence." *Commonwealth v. Robinson*, 2018 WL 2041425, at *3 (Pa.Super. filed 5/2/18) (*en banc*) (citation omitted). With regard to whether Appellant has alleged and proved a "fact" that was "unknown" to him, in *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007), our Supreme Court recognized that a Section 9545(b)(1)(ii) exception may arise from abandonment by counsel. As we have previously observed:

> In [ ] *Bennett*, [*supra*], counsel failed to file an appellate brief on appeal from the denial of [the] appellant's first PCRA petition, and as a result the appeal was dismissed. Our Supreme Court determined that counsel's failure to perfect [the] appellant's appeal constituted abandonment by counsel and could serve as a newly discovered fact for purposes of [S]ection 9545(b)(1)(ii) (newly discovered facts exception). In so holding, the Court distinguished Bennett's claim of counsel's abandonment from those claims of ineffectiveness that simply "narrowed the ambit of appellate review," and could not fall within the purview of [S]ection 9545(b)(1)(ii).

*Commonwealth v. Williamson*, 21 A.3d 236, 241–42 (Pa.Super. 2011).

We conclude that *Bennett* applies to the facts before us, as counsel's failure to file a brief with this Court did not merely narrow the scope of claims for review but altogether denied Appellant direct review from his judgment of sentence. Thus, counsel's failure to file a brief, which led to this Court dismissing the appeal, constitutes a newly-discovered fact for purposes of

- 10 -

Section 9545(b)(1)(ii). **See Williamson**, **supra** (holding counsel's failure to file a timely petition for allowance of appeal was a newly-discovered fact for purposes of section 9545(b)(1)(ii)).

Our inquiry does not end here, however. As it pertains to Section 9545(b)(1)(ii), we must determine whether Appellant exercised due diligence in discovering direct appeal counsel's failure to file a brief, which in turn led to this Court dismissing his direct appeal.[4]

"Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." **Commonwealth v. Williams**, 35 A.3d 44, 52 (Pa.Super. 2011) (citations omitted). Proof of due diligence in particular circumstances may ultimately require an evidentiary hearing. Initially, however, a petitioner must allege facts in his PCRA petition that could satisfy the due diligence standard. **See id.**

_____

[4] Appellant avers that he did not learn of counsel's failure to file an appellate brief or dismissal by this Court until after November 14, 2016, and he filed his PCRA petition on December 21, 2016. Even assuming, *arguendo*, Appellant met the initial 60-day threshold, his attempt to raise the "newly-discovered facts" exception fails for the reasons discussed *infra*. **See Commonwealth v. Williams**, 35 A.3d 44, 53 (Pa.Super. 2011) (explaining the sixty-day threshold requirement).

Here, the PCRA court concluded Appellant did not meet his burden of alleging in his petition facts that could satisfy the due diligence standard. We find no error. **See Taylor**, **supra**.

In his petition, Appellant averred that he wrote letters to direct appeal counsel on October 31, 2016, and November 14, 2016, requesting information pertaining to the status of his case. He alleged that direct appeal counsel failed to respond, and thus, after November 14, 2016, his family went "online" and found his docket information, thereby learning of counsel's failure to file a brief, as well as the dismissal of Appellant's direct appeal. As the PCRA court concluded, "[Appellant] offers no explanation as to why he could not have discovered that his appeal had been dismissed sooner or that he exercised due diligence in ascertaining whether his appeal was perfected." PCRA Court Opinion, filed 8/3/17, at 5.

Inasmuch as this Court dismissed Appellant's direct appeal on May 15, 2014, and the averments presented in Appellant's PCRA petition reveal he made no effort to learn the status of his appeal until October 31, 2016, we agree with the PCRA court that Appellant failed to offer evidence that, if proven, would meet the "due diligence" standard. Thus, Appellant is not entitled to the timeliness exception provided for in Section 9545(b)(1)(ii).

Because Appellant has not met his burden of proving that his untimely PCRA petition fits within one of the three exceptions to the PCRA's time-bar,

we affirm the order of the PCRA court.  We also grant PCRA counsel's petition to withdraw.

Petition to withdraw granted.  Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/18